IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| Eric Lamont Kittrell, Jr., | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:23-cv-1059 (RDA/JFA) |
| | ) | |
| Brown, *et al.*, | ) | |
|     Defendants. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Eric Lamont Kittrell, Jr. ("Plaintiff" or "Kittrell"), a former Virginia inmate, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 that alleged that his constitutional rights were violated while he was detained at the Rappahannock Regional Jail ("RRJ") on June 14, 2023. After the Court screened his original and first amended complaints, Plaintiff filed a second amended complaint ("SAC") on October 30, 2024, that alleged Defendant Walker violated his Fourteenth Amendment rights by using excessive force against Plaintiff, a pre-trial detainee, on June 14, 2023, by deploying pepper spray, even though pepper spray was not supposed to be deployed against Plaintiff because he has "chronic asthma." Dkt. No. 22 at 4. Further, despite his requests, Plaintiff was not taken to "medical" after being sprayed with OC Vapor spray ("OC spray"). *Id.* at 5.[1] Defendant Walker filed a Motion to Dismiss on December 30, 2024, with a brief in support and a declaration. Dkt. Nos. 25-28. Plaintiff was advised of his right to respond in accordance with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), and he filed several unsworn responses. Dkt. Nos. 32-34, 36-37, 40-41. On August 7, 2025, the Court denied Defendant Walker's motion for summary judgment without prejudice. Dkt. No. 43.

---

[1] On August 7, 2025, Defendant Brown was dismissed without prejudice. Dkt. No. 43 at 6.

Defendant Walker filed a second motion for summary judgment on October 6, 2025, with a brief in support and exhibits (including video footage). Dkt. Nos. 45-48. On October 7, 2025, the Court advised Plaintiff, in accordance with *Roseboro*, that Defendant Walker had filed a motion for summary judgment with a supporting brief and exhibits and that Plaintiff was entitled to file a response opposing Defendant's motion for summary judgment by filing counter-affidavits, statements, exhibits or other legal or factual material that supported his position in the case. Dkt. No. 51.[2] Plaintiff has not responded. Defendant Walker's second motion for summary judgment is ripe for disposition, and for the reasons stated herein, the motion will be granted.

**I. Undisputed Facts**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Defendant Walker has set forth a statement of undisputed facts in his motion for summary judgment. Plaintiff's failure to file a statement of undisputed and disputed facts renders the Defendant's facts admitted. *Gholson v. Murray*, 953 F. Supp. 709, 714 (E.D. Va. 1997) (court assumes uncontroverted facts in movant's motion for summary judgment are admitted); *see JDS Uniphase Corp. v. Jennings*, 473 F. Supp. 2d 705, 707 (E.D. Va. 2007) (movant's statement of undisputed facts is deemed admitted where nonmovant's response fails to "identify with any specificity which facts, if any, were disputed") (citing E.D. Va. Loc. Civ. R. 56(B)).[3]

1. Plaintiff was a pre-trial detainee at the RRJ on June 14, 2023. Dkt. No. 22 at 4.

2. On June 14, 2023, Defendant Alexander Walker was assigned as A Zone Supervisor on dayshift (Team 3) at the RRJ. At approximately 7:45 a.m. on June 14, 2023, he

---

[2] Plaintiff was released from custody on April 26, 2025. Dkt. No. 42.

[3] The record of admissible evidence includes Defendant Walker's exhibits, including the authenticated video footage. Dkt. No. 46-1 through 46-5; *see Goodman v. Diggs*, 986 F.3d 493, 498-99 (4th Cir. 2021) (verified pleadings are the "equivalent of an affidavit").

received a phone call from Officer Rovier in the A3 dayroom. Defendant Walker could hear Plaintiff yelling in the background while he spoke with Officer Rovier. Plaintiff was threatening the safety of other inmates and interfering with the orderly operation of the facility. Plaintiff was relocated to a different location to prevent him from acting on his threats, and to ensure the safety and security of the facility. Defendant Walker went to the pod and spoke with Plaintiff. To relocate Plaintiff, Defendant Walker told him to place his hands on the wall. Plaintiff did not initially but did comply after Defendant Walker placed one of Plaintiff's arms in an escort hold and gave him a second order to place his hands on the wall. Defendant Walker handcuffed Plaintiff and then Plaintiff was moved to cell SP3-10 in administrative segregation by Corporal Woodard and Defendant Walker so that Plaintiff could not act on his threats or harm others. Dkt. No. 46-1 at ¶ 2; *id.* at 9, 11-12. Plaintiff was institutionally charged with making threats to other inmates. *Id.*

3. After being placed in administrative segregation, Plaintiff covered the cell window and refused multiple orders to uncover the window.[4] Dkt. No. 22 at 4. At approximately 9:07 a.m., on June 14, 2023, Corporal Gibson ("Gibson") relieved another officer at cell SP3-10, where Plaintiff was being held.[5] Gibson observed that the inside of the window was covered with a

---

[4] The mattress also obstructed the view from the food tray slot, and references to just the window should be understood to also cover the food tray slot as well.

[5] The video footage has no audio and consists of five videos from different angles. The videos are labeled V1 through V5 and are part of docket entry 46-3. V1 is approximately two hours in length and is the view of from the end of the hallway in administrative segregation nearest to cell SP3-10; V2 is the view from the other end of the same hallway and is also about two hours long; V3 is the area at the end of the hall after you exit the administrative segregation hallway and is about one hour long; V4 and V5 are overhead views of the area after you exit the administrative segregation hallway and each is roughly ten minutes long. The Court has viewed each video. Significant portions of each of the of the five videos have little relevant activity. The Court will use the time stamp on the bottom of the video and round to the nearest minutes. Further, because the V1 and V2 footage is time synced, the Court will only cite primarily to V1 rather than include duplicate cites from the other videos. The videos closely mirror the events detailed in the undisputed affidavits and the context of the affidavits assists in identifying which officers are Gibson, Defendant Walker, Lt. Jones, and Officer Olvera ("Olvera"). Lastly, the video footage time stamps are approximate.

mattress, which was a safety and security issue because there was no way to see Plaintiff in the cell. Gibson asked Plaintiff why he had covered the cell window. Plaintiff stated that he wanted his tote and some toilet paper. Gibson offered to give Plaintiff toilet paper if he uncovered the cell window, and Plaintiff replied, "Nah. I don't want it now. Just spray me." Gibson gave Plaintiff a direct order to uncover the window. Plaintiff did not comply. According to normal procedure, Gibson notified Defendant Walker, his supervisor. Dkt. No. 46-2 at ¶ 2; V1 at 9:07-08.

4.  At approximately 9:07 a.m., Gibson informed Defendant Walker that Plaintiff was acting out again and had covered his cell door window with the cell's mattress. Defendant Walker was also informed that Plaintiff had repeatedly refused orders from multiple officers to remove the mattress and uncover the window. Covering the window prevented officers from observing Plaintiff inside the cell to monitor his safety and behavior. Dkt. Nos. 46-1 at ¶2; 46-2 at ¶ 2.

5.  Because it was likely that officers would have to extract Plaintiff from the cell in order to remove the mattress covering the window, Gibson contacted Medical to check if Plaintiff had any medical restrictions preventing the use of OC spray. Dkt. Nos. 46-2 at ¶ 3; 46-1 at ¶ 3.

6.  Medical confirmed that, per their records, neither Plaintiff nor any other inmates in that pod (SP3) had medical restrictions preventing the use of OC spray. Dkt. No. 22 at 4-5; 46-1 at ¶ 3; 46-2 at ¶ 3.

7.  Gibson relayed the information from Medical to Defendant Walker. Dkt. Nos. 46-1 at ¶ 3; 46-2 at ¶ 3.

8.  The jail intake sheets for Plaintiff also stated "no" as to the question regarding whether he had asthma. Dkt. No. 46-4 at 1-2, 4-8.

9.  Because Defendant Walker had been informed that there were no medical restrictions preventing the use of OC spray, he used that fact in developing a plan for extracting Plaintiff from the cell so that the window covering could be removed: officers could potentially

use OC spray if Plaintiff continued to refuse orders or became combative or violent in refusing orders. Dkt. No. 46-1 at ¶ 3.

10. Defendant Walker went to the SP3 Hallway, approached cell 10, spoke with Plaintiff and asked him why his window was covered. Plaintiff stated that he wanted his tote. Defendant Walker informed Plaintiff that he would give him his tote once his cell window was uncovered. Defendant Walker then ordered Plaintiff, multiple times, to uncover the cell door window; Plaintiff did not comply and stated he wanted to be sprayed with OC spray. Defendant Walker then informed Plaintiff that if he did not comply with the order, that OC spray may be used to gain compliance. Plaintiff removed the mattress from the window, which revealed that Plaintiff was standing at the back of the cell. Defendant Walker asked Plaintiff if he would keep the cell window uncovered, and Plaintiff stated he would not. Plaintiff then recovered and uncovered the cell door window multiple times. Defendant Walker asked Plaintiff why he was doing that, and he stated that he wanted to "eat" the OC spray. Dkt. Nos. 46-1 at ¶ 4; 46-2 at ¶ 4; V1 at 9:12-14.

11. Defendant Walker exited the unit to speak with his chain of command regarding the next steps for handling Plaintiff's refusals. Defendant Walker returned to SP3-10 and ordered Plaintiff to place his hands behind his back and out the tray slot so that he could be secured in handcuffs and removed from the cell. Plaintiff refused to comply. It was then about 30 minutes since Defendant Walker had been called to the unit. Defendant Walker administered a short burst of OC spray at approximately 9:30 a.m. through the food tray slot, secured the tray slot, and exited the housing unit. Dkt. No. 46-1 at ¶ 5; 46-2 at ¶ 4; V1 at 9:29-30 a.m.

12. Defendant Walker and Gibson returned to the cell at approximately 9:44 a.m., opened the tray slot, and Defendant Walker ordered Plaintiff to place his hands behind his back and through the tray slot to be handcuffed. At 9:45 a.m., Plaintiff started to comply by placing his hands out the tray slot but then pulled his hands back into the cell and went to stand on the cell

sink. Plaintiff refused Defendant Walker's orders to get down from the sink and place his hands through the tray slot. Defendant Walker secured the tray slot and then exited the unit to speak with his chain of command. Dkt. No. 46-1 at ¶ 5; Dkt. No. 46-2 at ¶ 5; V1 at 9:44-45 a.m.; Dkt. No. 46-5 at ¶ 2.

      13.    At approximately 9:53 a.m., Lieutenant Jones ("Lt. Jones") arrived in administrative segregation, came to the door of SP3-10, looked through the window, and observed Plaintiff standing on top of the sink in the cell. Lt. Jones ordered Plaintiff to get off the sink and come to the door to be handcuffed. At approximately 9:54 a.m., Plaintiff complied and put his hands through the tray slot, Defendant Walker handcuffed Plaintiff with his hands behind his back, and the cell door was opened. Plaintiff was not under any visible sign of distress from the OC spray and walked unassisted down the hallway. Dkt. No. 46-1 at ¶ 6; Dkt. No. 46-2 at ¶ 6; V1 at 9:52-53; Dkt. No. 46-5 at ¶ 3.

      14.    Due to Plaintiff being out of view of staff for a considerable amount of time, Lt. Jones ordered Plaintiff to be strip searched. Gibson, Olvera, and Defendant Walker escorted Plaintiff to the administrative segregation bathroom (out of camera view) to conduct the strip search. Lt. Jones followed Defendant Walker, Gibson, and Olvera as they escorted Plaintiff to the bathroom at the end of hall. Once inside of the bathroom, Plaintiff stated that he would not comply with staff during the strip search. At the time, Plaintiff was only wearing shorts and shoes, as he had already removed his other clothing. Plaintiff's shorts and shoes were removed; a visual search was conducted but no contraband was located. The officers dressed Plaintiff and then escorted him from the bathroom to the area just outside the hallway and waited for medical staff to arrive. Dkt. Nos. 46-1 at¶ 6; Dkt. 46-2 at ¶ 6; V3 at 9:52-53 a.m.; V4 at 9:52-53 a.m.; Dkt. 46-5 at ¶ 4.

      15. At approximately 10:03 a.m., Lt. Jones called Central Control to turn on the exhaust fans in the pod (SP3). Dkt. No. 46-5 at ¶ 5.

6

16. Nurse Holdbrook arrived shortly after and examined Plaintiff and then medically "cleared" Plaintiff. Dkt. No. 46-1 at ¶ 7; Dkt. No. 46-2 at ¶ 7; V4 at 9:56-59; Dkt. No. 46-5 at ¶ 5.

17. Plaintiff was then escorted to the SP3 shower, where his handcuffs were removed and he was secured in the shower by Defendant Walker, Gibson, and Olvera. Plaintiff was given a towel, soap, and a clean jumpsuit, so that he could decontaminate himself. Once Plaintiff was secured in the shower, Lt. Jones returned to his regular duties. Dkt. No. 46-1 at ¶ 7; Dkt. No. 46-2 at ¶ 7; V2 at 10:01-03; Dkt. No. 46-5 at ¶ 5.

18. While Plaintiff was in the shower, an officer removed his mattress from SP3-10, and the cell was cleaned. Dkt. No. 46-1 at ¶ 7; V2 at 10:06-10 and 10:29-32 a.m.[6]

19. Thereafter, Gibson and Defendant Walker returned to the shower door. Plaintiff stated that he had not showered, and that he was refusing to shower, get dressed, or be removed from the shower. He then refused multiple orders from staff to get dressed and place his hands behind his back and through the slot in the shower door to be handcuffed and removed from the shower. Defendant Walker informed Plaintiff that OC spray may be used to gain his compliance. Defendant Walker again ordered Plaintiff to get dressed and he refused. Defendant Walker then removed the OC spray from his duty belt holster and shook it in preparation for use. Plaintiff stated he did not want to be sprayed with the small can and instead he wanted the "big can" (referring to the OC spray used at his cell). Plaintiff then complied but refused to put on the clean jumpsuit. No one used the spray. Plaintiff placed his hands behind his back and through the slot, and Defendant Walker secured him in handcuffs. Dkt. No. 46-1 at ¶ 8; Dkt. No. 46-2 at ¶ 8; V2 at 10:45-52 a.m.

---

[6] Two different cleaning crews entered cell SP3-10, each pushing a cart with different types of apparent cleaning materials about fifteen minutes apart. The mattress had already been removed by an officer.

7

20. Gibson and Defendant Walker then escorted Plaintiff back to SP3-10. While walking there, Plaintiff stated that he was going to continue covering his cell door window because he wanted to keep getting OC Vapor sprayed. Plaintiff then stated that he would spit on staff and throw urine and feces at staff through the tray slot. Plaintiff was compliant when Gibson and Defendant Walker removed his restraints, and Plaintiff was secured in cell SP3-10. Dkt. No. 46-1 at ¶ 9; Dkt. No. 46-2 at ¶ 9; V1 at 10:53-55 a.m.

## II. Standard of Review

It is well settled that a motion for summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

Where, as in this case, the nonmoving party has the burden of proof at trial, the moving party needs only demonstrate that there is a lack of evidence to support the non-movant's claim. *See Celotex*, 477 U.S. at 323-25. In response to such a showing, the party opposing summary judgment must go beyond the pleadings and proffer evidence that establishes each of the challenged elements of the case, demonstrating that genuine issues of material fact do exist that must be resolved at trial. *See id.* at 324; *Anderson*, 477 U.S. at 248. The party who bears the burden of proving a particular element of a claim must "designate 'specific facts showing there is a genuine issue for trial'" with respect to that element. *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

In reviewing the record on summary judgment, the Court "must draw any inferences in the light most favorable to the non-movant" and "determine whether the record taken as a whole could lead a reasonable trier of fact to find for the non-movant." *Brock v. Entre Computer Ctrs., Inc.*, 933 F.2d 1253, 1259 (4th Cir. 1991) (citations omitted). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

The non-moving party, however, must show more than some metaphysical doubt as to the material facts. "[T]he non-moving party 'may not rest upon mere allegation or denials of his pleading but must set forth specific facts showing that there is a genuine issue for trial.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Anderson*, 477 U.S. at 256). Conclusory allegations, unsubstantiated assertions, improbable inferences, unsupported speculation, or only a scintilla of evidence will not carry this burden. *See Anderson*, 477 U.S. at 249-50. There must be evidence on which the jury could reasonably find for the non-moving party. *Id.* at 252. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of evidence that the opposing party is entitled to a verdict.

When a defendant moves for summary judgment on ground that plaintiff lacks evidence of an essential element of his claim, plaintiff is required, if he wants to ward off grant of the motion, to present evidence of evidentiary quality (either admissible documents or attested testimony, such as that found in depositions or in affidavits) demonstrating existence of genuine issue of material fact; evidence need not be in admissible form, but it must be admissible in content, in the sense that a change in form, but not in content, would make evidence admissible at trial. *See Celotex*, 477 U.S. at 324.[7]

---

[7] The Fourth Circuit has observed that *Scott v. Harris*, 550 U.S. 372, 378 (2007), "'added [a] wrinkle' to the traditional summary judgment rule." *Simmons v. Whitaker*, 106 F.4th 379, 385

**III. Analysis**

Plaintiff alleges that Defendant Walker violated his Fourteenth Amendment rights by deploying OC spray and thereafter denying him medical care. Defendant Walker has moved for summary judgment, supported his motion with sworn affidavits, authenticated documents, and contemporaneous authenticated videos of the relevant events on June 14, 2023. Plaintiff has not submitted any response disputing Defendant Walker's affidavits, documents, or the videos.

Because Plaintiff was a pretrial detainee on June 14, 2023, his excessive force claim is governed by the Due Process Clause of the Fourteenth Amendment. Unlike the Eighth Amendment, which "only protects post-conviction detainees from 'cruel and unusual punishment,' the Fourteenth Amendment Due Process Clause protects pretrial detainees from being punished at all." *Short v. Hartman*, 87 F.4th 593, 606 (4th Cir. 2023) (citation omitted); *see also Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988) ("[T]he pretrial detainee, who has yet to be adjudicated

---

(4th Cir. 2024).

> "[W]hen a video 'quite clearly contradicts the version of the story told by [the plaintiff] . . . so that no reasonable jury could believe it, a court should not adopt that version of the facts for the purposes of ruling on a motion for summary judgment.'" *Witt v. W. Va. State Police, Troop 2*, 633 F.3d 272, 276 (4th Cir. 2011) (quoting *Scott*, 550 U.S. at 380) (second alteration in original). Thus, at the summary judgment stage, video evidence can only discredit a nonmovant's factual assertions if the video "blatantly" contradicts the nonmovant's position. *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008) (internal quotation marks omitted).

*Simmons*, 106 F.4th at 385. The absence of audio limited the usefulness of the video footage, but the video did clearly and blatantly negate several of the Plaintiff's allegations. The decision to deploy OC spray was a calm, deliberative process that involved consultation and assessment by supervisors and medical personnel as well. The video likewise clearly establishes that Plaintiff was refusing legitimate orders designed for security and safety, and that Plaintiff did not have asthma, at least not on or before June 14, 2023. To be sure, the officers dealing directly with Plaintiff's irrational obstinance not only checked with medical and were advised there was no medical restriction to the use of the OC spray, but they also had a medical person on standby in the event the OC spray was deployed. The video showed no "steaming hot shower"—indeed, Plaintiff refused to shower. The video also established that Plaintiff walked without assistance immediately after being removed from the cell and showed no signs of distress.

10

guilty of any crime, may not be subjected to *any* form of punishment." (emphasis in original)). Accordingly, "the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." *Kingsley v. Hendrickson*, 576 U.S. 389, 397-98 (2015) (citation omitted).

To prevail on his claim of excessive force, Plaintiff "must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id.* at 396-97. "[O]bjective reasonableness turns on the facts and circumstances of each particular case," and various factors, including the following, "may bear on the reasonableness or unreasonableness of the force used:"

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.* at 397 (internal quotation marks omitted). Because the applicable standard is objective, "the defendant's state of mind is not a matter that a plaintiff is required to prove." *Id.* at 395. Instead, "a pretrial detainee can prevail by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." *Id.* at 398.

Here, the Court finds that the undisputed facts establish that Plaintiff was threatening and disruptive, which required officers to move him to administrative segregation. A little more than an hour later, Plaintiff was again disruptive and refused to comply with several orders to unblock his cell window and tray slot, which prevented officers from viewing Plaintiff—a safety and security issue. Defendant Walker, Gibson's supervisor, was summoned and Plaintiff refused Walker's orders as well. Gibson checked with the medical unit, which informed him there were no medical restrictions on using OC spray on Plaintiff or any of the other inmates in the pod.

11

Defendant Walker was informed there were no medical restrictions and consulted with his supervisor, Lt. Jones, and returned.

After Plaintiff again refused to comply, at approximately 9:30 a.m., *see supra* at ¶ 11, Walker deployed a short burst of OC spray through the tray slot. The officers left and returned a short time later. At that time, Plaintiff pretended to comply but repeatedly failed to do as ordered. Defendant Walker again consulted with Lt. Jones. Lt. Jones went to the pod, ordered Plaintiff to put his hands through the tray slot to be cuffed, and Plaintiff complied. Due to the prolonged period in which the officers could not observe Plaintiff because he had blocked the window, Lt. Jones ordered a strip search for weapons. Plaintiff did not comply, and the officers removed his shorts and shoes, the only clothing he had on at that time, conducted a visual strip search that found no weapons. The officers redressed Plaintiff and then moved him to the bathroom where he was examined by a nurse. The nurse cleared Plaintiff and he was escorted to a shower cell. Plaintiff's handcuffs were removed, he was secured in the shower cell and given a towel, soap, and a clean jumpsuit. The officers returned, Plaintiff stated that he refused to shower, and the officers redressed him before he was returned to his cell in administrative segregation. The cell had been cleaned while Plaintiff had been taken to be searched and examined by the nurse, and the pod had been ventilated while Plaintiff was secured in the shower cell.

The undisputed facts demonstrate that the use of force was necessary because Plaintiff had been threatening other inmates and interfering with the order within RRJ, which supported his move to administrative segregation. After being placed in administrative segregation, Plaintiff continued to refuse to comply with the orders of officers by not unblocking his window, which prohibited officers from viewing inside the cell and thereby raised a security concern. His noncompliance continued after Defendant Walker arrived in administrative segregation about 9:00

a.m. Walker's approach relied on negotiation and seeing if Plaintiff would relent. When these tempered approaches failed, Walker consulted with his superior officer before deploying OC spray and warned Plaintiff that, if he refused to comply, they would use OC spray. Plaintiff continued not to comply, and a short burst of OC spray was used. Plaintiff was seen shortly after he was administered the OC spray and cleared by a nurse. The video of Plaintiff clearly establishes he had no difficulty walking, he was conversing with officers, and he did not exhibit any noticeable signs of physical distress. In short, analyzing Defendant Walker's conduct, as well as the other non-defendant officers, against the *Kingsley* factors, the record evidence establishes that the force used was tempered and reasonably necessary in the circumstances to enforce jail regulations and maintain safety and security. Plaintiff prolonged the situation by actively resisting compliance, which required the limited use of the OC spray to overcome his resistance and restore order.

As to the assertion that Defendant Walker was deliberately indifferent and refused to provide Plaintiff with medical care, as a pretrial detainee, Plaintiff "must plead that (1) he had a medical condition or injury that posed a substantial risk of serious harm"; (2) Defendant Walker "intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed"; (3) Defendant Walker "knew or should have known (a) that the detainee had that condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm"; and (4) as a result, "[Plaintiff] was harmed." *Short*, 87 F.4th at 611.

The undisputed evidence in this case indicates that Gibson checked with medical and determined that Plaintiff did not have any medical restrictions that prohibited the use of OC spray to extract Plaintiff. Defendant Walker was made aware of what Gibson had learned. Plaintiff's answer to jail intake questions, on several occasions, provide undisputed evidence that Plaintiff had indicated that he did not have asthma. Further, Plaintiff was not harmed, as is evident by the

13

nurse clearing him and the fact that he was subsequently returned to his cell after he had been given the opportunity to shower, which he refused.

### IV. Conclusion

For the reasons outlined above, it is hereby

ORDERED that Defendant Walker's motion for summary judgment, Dkt. No. 45, is GRANTED; and it is

FURTHER ORDERED that judgment be and is entered in favor of Defendant Walker.

This is a final Order for the purposes of appeal. To appeal this decision, Plaintiff must file a written notice of appeal with the Clerk's office within thirty (30) days of the date of this Order. *See* Fed. R. App. P. 4(a). A written notice of appeal is a short statement indicating a desire to appeal and including the date of the Order the plaintiff wishes to appeal. Failure to file a timely notice of appeal waives the right to appeal this decision.

The Clerk is directed, pursuant to Fed. R. Civ. P. 58, to enter final judgment in favor of Defendant Walker; to send a copy of this Final Order to *pro se* Plaintiff and to all counsel of record for Defendants; and to close this civil action.

It is SO ORDERED.

/s/
Rossie D. Alston, Jr.
United States District Judge

Alexandria, Virginia
December 18, 2025